UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RALPH CHAMBLISS,

                                    Case No. 11-10283

              Plaintiff,                 District Judge George Caram Steeh

v.                                       Magistrate Judge R. Steven Whalen

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,

              Defendant.
_____/

## REPORT AND RECOMMENDATION

      Plaintiff Ralph Chambliss brings this action under 42 U.S.C. §405(g), challenging a final decision of Defendant Commissioner denying his application for Disability Insurance Benefits under the Social Security Act.  Parties have filed cross motions for summary judgment which have been referred for a Report and Recommendation pursuant to 28 U.S.C. §636(b)(1)(B).  For the reasons set forth below,  I recommend that Plaintiff's Motion for Summary Judgment [DE #9] be DENIED and that Defendant's Motion for Summary Judgment [DE #12] be GRANTED.

## I.   PROCEDURAL HISTORY

      Plaintiff applied for Disability Insurance Benefits ("DIB") on July 18, 2007, alleging a disability onset date of September 14, 2006 (Tr. 79).   Upon denial of the claim, Plaintiff requested an administrative hearing, held on December 14, 2009  in Lansing, Michigan (Tr.

24).   Administrative Law Judge ("ALJ") Thomas L. English presided (Tr. 24).   Plaintiff, represented by attorney Mikel Lupisella, testified (Tr. 2-40).   On January 29, 2010, ALJ English found Plaintiff not disabled (Tr. 19).   On November 17, 2010, the Appeals Council denied review (Tr. 1-3).   Plaintiff filed suit in this Court on January 21, 2011.

## II.   BACKGROUND FACTS

Plaintiff, born October 7, 1958, was 51at the time of the administrative decision (Tr. 19, 79).   He graduated from high school and worked previously as a "material driver/handler" (Tr. 94, 100).   His application for benefits alleges disability as a result of hypertension, hernia surgery, and a bone tumor (Tr. 93).

### A.  Plaintiff's Testimony

Plaintiff testified that he stood 5' 10" and weighed 160 pounds (Tr. 27).   Plaintiff, unmarried, stated that his current source of income was "extended disability" benefits (Tr. 27).   He stated that he had a valid driver's license, but seldom drove (Tr. 28).   He denied any gainful activity or volunteer work since becoming disabled on September 14, 2006 (Tr. 28). He indicated that in addition to his high school education, he had taken some community college courses (Tr. 28).

Plaintiff acknowledged that he had undergone hernia surgery, but alleged that he continued to experience groin pain (Tr. 29).   He stated that he also experienced shoulder pain (Tr. 29).   He stated that he was currently undergoing therapy for his shoulder and was currently taking nine medications for hypertension (Tr. 29).   He noted that he had sought emergency treatment the previous Sunday for hypertension (Tr. 30).   He alleged that on a

scale of 1 to 10, he regularly experienced level 7.5 shoulder pain and level 6 groin pain (Tr. 31).  He stated that he took Vicodin up to four times each week and was also taking Morphine twice a week (Tr. 32-33).  He denied medication side effects, drinking, or using illicit drugs (Tr. 33).

Plaintiff alleged that he was unable to walk for more than 10 feet or stand or sit for more than half an hour (Tr. 34).  He stated that he was unable to lift more than 10 pounds due to knee, neck, and back problems (Tr. 34-35).  Plaintiff stated that approximately three years before the hearing, he received brief psychological counseling (Tr. 35).  He indicated that he enjoyed reading and watching television (Tr. 35).  He alleged short term memory problems, but stated that he had good relationships with family and friends (Tr. 36).  He denied recent long distance travel, performing household chores, or grocery shopping (Tr. 37).  He stated that he no longer went to church because of difficulty sitting for long periods (Tr. 37).  He indicated that as a result of the removal of a tumor on a finger bone, he was unable to bowl (Tr. 38).  He also stated that routine foot surgery had revealed the presence of a tumor attached to a foot bone (Tr. 38).

### B.  Medical Records

### 1.  Examining Sources

March, 2005 stress tests results were essentially normal (Tr. 133).  In January, 2006, orthopaedic surgeon Kenneth E. Stephens, D.O. found that Plaintiff required surgery to remove a tumor attached to his finger bone (Tr. 117).  The following month, Plaintiff underwent surgery without complications (Tr. 124, 127-128).  In March, 2006, Plaintiff was

-3-

administered steroid injections for shoulder pain (Tr. 178).  In May, 2006, Plaintiff reported continued finger pain (Tr. 122).  The same month, Sreenivasa Murthy, M.D. advised Plaintiff to avoid strenuous activities with the left shoulder (Tr. 174).

In June, 2006, Anthony Meier, M.D. noted that Plaintiff continued to experience hypertension (Tr. 172).  In July, 2006, a sleep study found "mildly reduced sleep efficiency" (Tr. 118).  Plaintiff was advised to use nasal strips or a nasal decongestant (Tr. 120).  The same month, Dr. Meier noted that Plaintiff continued to be "somewhat noncompliant with blood pressure medication" (Tr. 168).   The following month, Dr. Murthy diagnosed tendinitis (Tr. 164).  Plaintiff sought emergency treatment for severe back pain after pulling his back (Tr. 160, 162).  Imaging studies were negative for abnormalities (Tr. 162, 243).  He was prescribed Flexeril and Motrin 800 and advised to begin physical therapy (Tr. 162).

In September, 2006, Dr. Meier observed that Plaintiff did not experience any joint problems but that his blood pressure was "still out of sight" (Tr. 155).  The same month, Plaintiff sought emergency treatment for headaches caused by hypertension (Tr. 219, 227).  A CT scan of the head was unremarkable (Tr. 227).  Plaintiff exhibited equal strength in all extremities (Tr. 221).  He received medication and was discharged the following day with "well-controlled blood pressure" (Tr. 211).

In January, 2007, imaging studies of the left shoulder were unremarkable (Tr. 194).  Dr. Meier found that because of continued hypertension, Plaintiff was "not yet stable enough to return to work" (Tr. 144).  The same month, Dan L. Hunt, D.O. found that Plaintiff's blood pressure was "doing better" to the point that he was capable of undergoing a hernia

-4-

repair (Tr. 247).   The following month Plaintiff underwent a hernia repair without complications (Tr. 206).   In March, 2007, Plaintiff underwent left rotator cuff surgery, performed by David A. Detrisac, M.D. (Tr. 199-200, 202, 259-260).   The same month, Dr. Meier noted that Plaintiff experienced multiple conditions, remarking on recent rotator cuff and hernia surgeries (Tr. 138-139).   Dr. Meier also noted that Plaintiff experienced severe hypertension (Tr. 139).   In April, 2007, a CT of the abdomen performed in response to Plaintiff's complaints of continued pain was essentially normal (Tr. 196).   Dr. Hunt found that Plaintiff's post-hernia repair issues were resolving and that he could return to work the first week of May, 2007 (Tr. 244).   In May, 2007, Dr. Detrisac found that Plaintiff had recovered sufficiently from rotator cuff surgery to return to work without restrictions as of May 14, 2007 (Tr. 249).

In August, 2007, neurologist Jeffrey R. Levin, M.D. examined Plaintiff, noting complaints of continued shoulder pain (Tr. 282).   Plaintiff demonstrated signs of mild carpal tunnel syndrome ("CTS") (Tr. 282).   In August, 2007, Dr. Meier found that Plaintiff continued to be disabled as a result of hypertension and stress (Tr. 297).   The following month, Dr. Meier noted that Plaintiff continued to be "under a great deal of stress," but did not exhibit psychiatric or emotional problems (Tr. 336).   In November, 2007, an MRI of the cervical spine showed non-significant results except for "diffuse posterior bulging" at C6-7 (Tr. 284).   An MRI of the lumbar spine showed only mild abnormalities (Tr. 285).   Dr. Meier noted that Plaintiff was currently compliant with hypertension medication (Tr. 334).

In April, 2008, Laura Zuger, M.D. noted that Plaintiff was non-compliant with

medical advice to control blood pressure, stating "He seems to be more interested in staying on disability" (Tr. 327). In June, 2008, Dr. Levin stated that the November, 2007 imaging studies required a neurosurgical evaluation (Tr. 302). In July, 2008, physiatrist Reuben S. Henderson noted that Plaintiff continued to complain of continued shoulder pain (Tr. 291). Plaintiff reported relief from icing the painful area and taking Vicodin (Tr. 291). Dr. Henderson noted a past medical history of depression (Tr. 291). Plaintiff admitted that he was able to do sit-ups for exercise (Tr. 292). Plaintiff demonstrated 4/5 strength in the left shoulder (Tr. 292). Dr. Henderson imposed work restrictions of "no lifting, pushing, or pulling of greater than [five] pounds" (Tr. 293). Dr. Henderson precluded overhead reaching on the left (Tr. 293). An MRI performed in September, 2008 showed only mild abnormalities and possible tendinosis (Tr. 295). The same month, Dr. Meier's treating notes indicate that Plaintiff experienced blood pressure fluctuations but denied body pain or stiffness (Tr. 322-324). The physical examination was otherwise unremarkable (Tr. 324).

In January, 2009, Dr. Meier noted that Plaintiff walked and biked for exercise (Tr. 317). Plaintiff denied pain or stiffness (Tr. 319). In April, 2009, Dr. Meier's treating notes state that Plaintiff exhibited normal joint movements and normal muscle strength and tone (Tr. 311). Plaintiff denied anxiety or depression (Tr. 310). Plaintiff noted that he had been out of blood pressure medicine since the week before the exam (Tr. 308). In May, 2009, Dr. Meier's treating notes state that Plaintiff experienced anxiety and hypertension (Tr. 304). Plaintiff admitted that he walked and biked for exercise (Tr. 304). He denied anxiousness (Tr. 305). His muscle strength and tone were normal (Tr. 306). During a June, 2009, deposition

-6-

on behalf of a Workers' Compensation claim, Dr. Henderson testified that Plaintiff should be permanently restricted from lifting more than 10 pounds and all overhead lifting[1] (Tr. 299-300).

### 2.   Non-Examing Sources

In August, 2007, a non-examining Physical Residual Functional Capacity Assessment performed on behalf of the SSA found Plaintiff capable of lifting 50 pounds occasionally and 25 frequently; standing, sitting, or walking for six hours in an eight-hour workday; and pushing and pulling without limitation (Tr. 260).  The Assessment found the absence of all non-exertional limitations (Tr. 261-263).  The assessor stated that she relied on Dr. Detrisac's May, 2007 finding that Plaintiff could return to work without restrictions (Tr. 265).  A Psychiatric Review Technique performed the same month found the absence of a psychological disorder (Tr. 268).

### C.  The ALJ's Decision

Citing Plaintiff's medical records, ALJ English found that although Plaintiff experienced the severe impairments of "degenerative joint disease, shoulder, status-post surgery; hernia with continued pain; and hypertension," none of the conditions met or equaled any impairment listed in Appendix 1, Subpart P, Regulations No.4 (Tr. 13-14).  He determined that Plaintiff's depression was a "non-severe" impairment (Tr. 14).  The ALJ

---

[1]Only three pages of Dr. Henderson's deposition testimony are included in the transcript (Tr. 299-301).

found that Plaintiff retained the Residual Functional Capacity ("RFC") for a full range of exertionally light work[2] (Tr. 14). The ALJ found that Plaintiff would be unable to return to his past relevant work as a janitor and factory worker, noting that both jobs had been performed at the medium exertional level (Tr. 18).

The ALJ discounted Plaintiff's allegations of disability, noting that from June, 2007 through May, 2009, he exhibited a normal station and gait, normal muscle tone in all extremities, and a normal range of motion in all joints (Tr. 17). Despite a diagnosis of hypertension, the ALJ observed that Plaintiff did not experience dizziness, palpitations, or nose bleeds (Tr. 18). He noted further that Plaintiff had been repeatedly non-compliant with blood pressure medication (Tr. 18).

## III.   STANDARD OF REVIEW

The district court reviews the final decision of the Commissioner to determine whether it is supported by substantial evidence. 42 U.S.C. §405(g); *Sherrill v. Secretary of Health and Human Services,* 757 F.2d 803, 804 (6th Cir. 1985). Substantial evidence is more than a scintilla but less that a preponderance. It is "such relevant evidence as a reasonable

---

[2]

20 C.F.R. § 404.1567(a-d) defines *sedentary* work as "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools; *light* work as "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds;" *medium* work as "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds;" and that exertionally *heavy* work "involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds.

mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (*quoting Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, S. Ct. 206, 83 L.Ed.126 (1938)).  The standard of review is deferential and  "presupposes that there is a 'zone of choice' within which decision makers can go either way, without interference from the courts." *Mullen v. Bowen,*  800 F.2d 535, 545 (6th Cir. 1986)(en banc).  In determining whether the evidence is substantial, the court must "take into account whatever in the record fairly detracts from its weight." *Wages v. Secretary of Health & Human Services*, 755 F.2d 495, 497 (6th Cir. 1985). The court must examine the administrative record as a whole, and may look to any evidence in the record, regardless of whether it has been cited by the ALJ.  *Walker v. Secretary of Health and Human Services*, 884 F.2d 241, 245 (6th Cir. 1989).

## IV.   FRAMEWORK FOR DISABILITY DETERMINATIONS

Disability is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). In evaluating whether a claimant is disabled, the Commissioner is to consider, in sequence, whether the claimant: 1) worked during the alleged period of disability; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of an impairment listed in the regulations; 4) can return to past relevant work; and 5) if not, whether he or she

can perform other work in the national economy.  20 C.F.R. §416.920(a).  The Plaintiff has

the burden of proof at steps one through four, but the burden shifts to the Commissioner at

step five  to demonstrate that, "notwithstanding the claimant's impairment, he retains the

residual functional capacity to perform specific jobs existing in the national economy."

*Richardson v. Secretary of Health & Human Services,* 735 F.2d 962, 964 (6th Cir.1984).


## V.    ANALYSIS

### ALJ English Did not Err by Relying on the "Grids"

Plaintiff argues first that the ALJ committed reversible error by finding that non-

exertional limitations would not interfere with the ability to perform a full range of light

work.  *Plaintiff's Brief* at 6-8.  He contends that the presence of multiple non-exertional

limitations required the use of a VE at Step Five of the administrative sequence.  *Id.*

At Step Five, the burden of proof shifts to the Commissioner to establish that the

claimant retains the residual functional capacity to perform specific jobs existing in the

national economy.  *Richardson v. Secretary of Health & Human Services,* 735 F.2d 962, 964

(6th Cir.1984).  "In many cases, the Commissioner may carry this burden by applying the

medical-vocational grid at 20 C.F.R. Pt. 404, Subpt. P, App. 2, which directs a conclusion

of 'disabled' or 'not disabled' based on the claimant's age and education and on whether the

claimant has transferable work skills."  *Wilson v. Commissioner of Social Security*, 378 F.3d

541, 548 (6th Cir. 2004).  While "in the case of a non-exertional impairment, the grids may

be used to direct a conclusion if the claimant's non-exertional impairments[3] do not significantly reduce the underlying job base . . . the ALJ must back such a finding of negligible effect with the evidence to substantiate it." *Lopez v. Barnhart* 78 Fed.Appx. 675, 679, 2003 WL 22351956, *4 (10th Cir. 2003)(internal citations omitted).

Pursuant to 20 C.F.R. Pt. 404, Subpt. P, App. 2 § 200.00(e) and SSR 85-15, if a nonexertional limitation substantially limits a claimant's ability to perform other work, reliance on the grids is improper. "[W]here a nonexertional limitation might substantially reduce a range of work an individual can perform, the use of the grids would be inappropriate and the ALJ must consult a vocational expert." *Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001); *see also Wilson, supra*, at 548.

Plaintiff is correct that the medical transcript shows a number of "non-exertional" impairments. However, the relevant question is not whether he experiences non-exertional impairments; rather, whether the same impairments would "significantly erode" the job base at the chosen exertional level. SSR 85-15. Here, the Court must determine whether substantial evidence supports the ALJ's finding that Plaintiff's non-exertional limitations would not substantially reduce a full range of light work. *See Wilson,* at 548.

SSR 83-10, 1983 WL 31251, *5 (1983) describes exertionally light work as follows:

[L]ifting no more than 20 pounds at a time with frequent lifting or carrying of

---

[3]

The term "exertional" refers to the ability to lift, carry, sit, stand, walk, push, and pull. 20 C.F.R. § 404.1569a(b). In contrast, "non-exertional" refers to any other physical or psychological limitation, *i.e.,* postural, manipulative, visual, environmental, social, and concentrational limitations. 20 C.F.R. § 404.1569a(c).

objects weighing up to 10 pounds. Even though the weight lifted in a particular light job may be very little, a job is in this category when it requires a good deal of walking or standing--the primary difference between sedentary and most light jobs. A job is also in this category when it involves sitting most of the time but with some pushing and pulling of arm-hand or leg-foot controls, which require greater exertion than in sedentary work; e.g., mattress sewing machine operator, motor-grader operator, and road-roller operator (skilled and semiskilled jobs in these particular instances). Relatively few unskilled light jobs are performed in a seated position.

Substantial evidence supports the ALJ's finding that Plaintiff's non-exertional limitations would not significantly reduce the light job base. Admittedly, for the period following Plaintiff's rotator cuff surgery and hernia repair, his exertional limitations would have been expected to have created significant non-exertional limitations. However, both of Plaintiff's treating surgeons cleared him for unrestricted work (performed at the medium exertional level) as of May, 2007 (Tr. 244, 249). Assuming that between September, 2006 and May, 2007, Plaintiff would have been unable to perform a full range of light work, the nine-month period of limitation did not meet the 12-month durational requirement for benefits.

Further, while in August, 2007, Dr. Levin found mild CTS, Plaintiff does not state how this condition would prevent him from performing most light jobs. Likewise, he does not explain how mostly mild degenerative changes of the spine would be expected to prevent him from lifting 20 pounds occasionally and 10 frequently (Tr. 284-285). Although Plaintiff testified that he was able to stand or walk on a very limited basis, he told Dr. Meier that he walked and bicycled for exercise (Tr. 304). His ability to do so, along with numerous examination reports showing good muscle tone and joint flexibility, support the conclusion

-12-

that he retained the ability to perform a full range of light work on a sustained basis.

I also disagree with Plaintiff's related contention that the ALJ erred by according more weight to the opinions of Drs. Hunt and Detrisac than Dr. Henderson. *Plaintiff's Brief* at 8-10.  In particular, Plaintiff faults the ALJ for rejecting Dr. Henderson's July, 2008 finding that Plaintiff was unable to lift more than five pounds or reach overhead on the left (Tr. 293).

However, the ALJ's analysis of Dr. Henderson's treatment records and opinion was procedurally and substantively sound.[4]  The ALJ noted that Dr. Henderson's finding that Plaintiff was unable to lift more than five pounds was unsupported by imaging studies which showed mostly mild degenerative changes (Tr. 18).  Elsewhere, discussing Dr. Henderson's specialty and treating records (Tr. 16-17), the ALJ noted that Dr. Meier's treating records created one month before Dr. Henderson's deposition showed that Plaintiff was able to bike and walk for exercise (Tr. 18, 304).

---

[4]

If the opinion of the claimant's treating physician is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record, it must be given controlling weight." *See Hensley v. Astrue,* 573 F.3d 263, 266 (6th Cir.2009) (internal quotation marks omitted) (citing *Wilson,* 378 F.3d at 544; 20 C.F.R. § 404.1527(d)(2)). However, in the presence of contradicting substantial evidence, the ALJ may reject all or a portion of the treating source's findings, *see Warner v. Commissioner of Social Sec.,* 375 F.3d 387, 391–392 (6th Cir.2004), provided that he supplies "good reasons" for doing so. *Wilson,* at 547; 20 C.F.R. § 404.1527(d)(2).  In explaining reasons for rejecting the treating physician opinion, the ALJ must consider "the length of the ... relationship and the frequency of examination, the nature and extent of the treatment [,] ... [the] supportability of the opinion, consistency ... with the record as a whole, and the specialization of the treating source." *Wilson,* at 544.

-13-

Although not argued by Plaintiff, the ALJ also rejected Dr. Meier's opinion that hypertension would disable Plaintiff for six to twelve months, reasonably noting that while Plaintiff experienced occasional headaches, he did not experience any other symptoms associated with the condition (Tr. 16, 297). The ALJ also cited Dr. Meier's treating records showing normal muscle tone, joint function, and emotional stability, noting that the medical transcript supported the finding that Plaintiff was capable of performing a full range of light work (Tr. 305, 310, 319).

Finally, Plaintiff's cursory argument that the ALJ erred by failing to find a severe impairment of "cervical or lumbar radiculopathy or degenerative disc disease of the lumbar or cervical spine" at Step Two of the analysis is without merit. *Plaintiff's Brief* at 10-11. First, the ALJ's finding that Plaintiff experienced "degenerative joint disease" generously encompasses Plaintiff's allegations of back problems (Tr. 13). Further, the text of the ALJ's decision discusses the imaging studies of the spine in exhaustive detail - Plaintiff cannot claim that the ALJ failed to factor these possible limitations (mild as they appear to be) into his Step Five determination.

In closing, I note that my recommendation to uphold the Commissioner's decision should not be read to trivialize Plaintiff's legitimate limitations or personal problems. However, substantial evidence and even a preponderance of the evidence supports the conclusion that Plaintiff could perform a full range of light work. The ALJ's decision, well within the "zone of choice" accorded to the fact-finder at the administrative hearing level, *Mullen v. Bowen*, *supra*, should not be disturbed by this Court.

-14-

## VI.   CONCLUSION

For these reasons, I recommend that Plaintiff's Motion for Summary Judgment [DE #9] be DENIED and that Defendant's Motion for Summary Judgment [DE #12] be GRANTED.

Any objections to this Report and Recommendation must be filed within 14 days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS,* 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within 14 days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than 20 pages in length unless by motion and order such page limit is extended by the court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

**s**/ R. Steven Whalen
R. STEVEN WHALEN
UNITED STATES MAGISTRATE JUDGE

Date: February 8, 2012

-15-

CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record via the Court's ECF System to their respective email addresses or First Class U.S. mail disclosed on the Notice of Electronic Filing on February 8, 2012.

s/Johnetta M. Curry-Williams
Case Manager
